Foss *v.* Haynes.

Foss & al. *in equity, versus* Haynes & al.

A bill in equity is not rendered multifarious, by joining two good causes of complaint, growing out of the same transaction, when all the defendants are interested in the same claim of right, and when the relief asked for, in relation to each, is of the same general character.

A compensation in damages, for the breach of an agreement to convey real estate, is not regarded as adequate relief.

In such a case, the jurisdiction of a court of equity, to decree a specific performance, is universally maintained.

If one purchases land, *having knowledge* of a previous contract by the grantor, to convey the same land to another, the purchaser may be compelled, in equity, to convey the land in the same manner as would be required of his grantor.

If the design of such purchase was, to place the land beyond the reach of the person entitled to a conveyance, and thereby to defeat his just rights, a court of equity has jurisdiction on the ground of fraud.

Though a defendant in equity is not bound to criminate himself, or furnish evidence, by which a criminal accusation can be sustained; he may be compelled to make discovery of any act, which does not amount to a public offence, or an indictable crime, although it may be one of great moral turpitude.

Bill in equity. It was heard upon demurrer. The facts sufficiently appear in the opinion.

*Abbott* and *Howes,* for the plaintiffs.

*Heath* and *Davis,* for the defendants.

1. The bill is multifarious. It claims the performance of a contract to convey real estate made by *one* only of the respondents; also the return of money alleged to have been obtained by *one* only of them, in a transaction with which the other had no connection, and the refunding of money, paid as extra interest to *neither* of them. Such diverse claims cannot be united in one bill. Story's Eq. Pl. § 271 ; 1 Daniell's Ch. Pr. 384, note. " A bill is bad for multifariousness, when it is brought against *several defendants,* seeking redress for injuries arising out of transactions with them *separately,* at *different times,* and relating to different subjects. *Coe* v. *Turner,* 5 Conn. 86 ; *Marselis* v. *Morris Canal,* 1 Saxton, (N. J.) 31 ; 1 Daniell's Ch. Pr. 386, note.

2. The bill alleges a *contract, fraud,* and an *award,* and claims upon each of these grounds. Each is an essential part of the bill. It is therefore uncertain and equivocal. 1 Daniell's Ch. Pr. 435.

3. It does not appear but that there is an adequate remedy at law. There may be for the fraud alleged, as no discovery is prayed for, nor is a knowledge of it alleged to be confined to the defendants. *Dwinal* v. *Smith,* 25 Maine, 382. Or there may be on the agreement in writing to abide by the decision of the referees. *Brown* v. *Leavitt,* 26 Maine, 251.

4. If the allegations of fraud are well laid, the respondents ought not to be held to answer, for they might criminate themselves. Rev. Stat. chap. 161, § 2 ; 1 Greenl. Ev. § 451 ; 1 Daniell's Ch. Pr. 627, notes. Nor is the offence barred by the statute of limitations. *Dwinal* v. *Smith,* 25 Maine, 382.

5. The bill presents no case for the equity jurisdiction of this court.

1. It cannot be sustained for a *specific performance of the contract,* made in 1832, for that was made by *Haines* alone ; the plaintiffs did not pay their notes according to the terms of the bond ; and though the time was extended on *some* of the notes, the plaintiffs have not, even *to this day,* tendered to *Haines,* the amount they admit to be due.

2. It cannot be sustained on the *ground of fraud.* For it will be observed that all the allegations of fraud are based upon the acts of the respondents in taking hay and lumber, obtaining the cow, and conveying the premises to Tripp, in 1845. But not one of these acts was fraudulent, unless the plaintiffs had *before that time* paid up all their notes so as to acquire an *equitable* title to the premises. Until that was done, the respondents were owners both in law and in equity, and had a right to the possession, rents, and profits of the place. It appears from the bill itself, that, in October of that year, the plaintiffs tendered to one of these respondents, 260 dollars, as still due and unpaid on said notes. That being the case, none of the alleged acts were fraudulent. Our demurrer only admits the *facts* as alleged. A fraudulent *intention,* is an

inference of law, which a demurrer does not admit. Story's Eq. Pl. § 452; especially as the facts alleged *rebut* the inference of fraud, and take from this court all jurisdiction on that ground.

3. The only remaining ground on which it will be contended that the bill can be sustained, is for *the specific performance of the award.* This court, without question, has power to make such a decree. *Jones* v. *Boston Mill Cor.* 4 Pick. 507. But it will never use this power except in cases where it is satisfied, " that the award is in all points, exactly in pursuance of the agreement to refer." *Bubier* v. *Bubier*, 24 Maine, 42, 49. The rule thus laid down by this court is of great importance. For the *power* of referees depends altogether upon the *terms* of the submission. 2 Greenl. Ev. § 71, 72, 74, and notes. But this bill does not tell us any thing of the *terms* of this agreement to refer, nor give any reason for not doing it, nor ask any discovery of its contents. And as " nothing in a bill in equity can be supplied by inference," *Wright* v. *Dame*, 22 Pick. 55, there is no right to *infer* that the referees had authority to award the conveyance of real estate. All that is alleged of their powers is the fact that a former bill in equity was referred to them, not by rule of court, but in vacation. It was a reference at common law. Whether that bill would have been sustained by the court is of course uncertain. It must therefore be still more uncertain whether the referees to whom it was left, had greater powers than those possessed by this court. The plaintiffs are entitled to nothing, until it be shown that the award was such an one as the referees had authority to make.

Tenney, J. — The bill alleges substantially, that Hiram Haynes, one of the defendants, on Aug. 25, 1832, made a contract in writing with John Foss and Jonathan Foss, on condition that they should pay according to their tenor, six notes of hand for one hundred dollars each, and another for thirty dollars, all bearing interest, he would convey to them, their heirs and assigns, a part of a tract of land, which was

conveyed to him by Alfred Johnson, on June 26, 1832, and which he conveyed back in mortgage, for the security of the purchase money; that by the consent of said Haynes, the said John and Jonathan went into the possession of the land, which they had so contracted to purchase; and on the same day John Foss verbally sold his part of the contract to Josiah Chase, who engaged to assume his liabilities, and went into possession of the land with said Jonathan. On August 27, 1845, in pursuance of such verbal agreement, John Foss assigned in writing to Josiah Chase, his part of the contract with Haynes; that the two notes to Haynes, which first became due, were paid and taken up soon after their maturity; and Haynes, not having paid Johnson for the land, assigned to him as collateral security for his indebtedness, three of the outstanding notes against John and Jonathan Foss, each being for $100, one of which was paid by the plaintiffs to Johnson, and another paid partly to Johnson and partly to Haynes, and both taken up prior to March 9, 1841; that on March 9, 1841, Haynes conveyed to one Steel all the interest which he had in the land, that was purchased of Johnson, and Steel substituted his note, for the one against John and Jonathan Foss, remaining in the hands of Johnson not taken up, and the mortgage was thereupon discharged; that at the time of the conveyance to Steel, the latter agreed in writing to re-convey upon the terms mentioned in their agreement; and the former agreed with the plaintiffs that when they should pay the balance on the notes outstanding against the Fosses to Steel or Haynes, or both, to procure them a deed from Steel, of the land referred to in the contract; that afterwards a payment of fifty dollars was made upon the note of $100, which continued in the hands of Haynes, that was agreed to be indorsed, and on a settlement of accounts between Jonathan Foss and Haynes, there was found due to the former a sum equal to the balance of that note, which it was agreed should be applied thereto, but was omitted to be taken up, although it was understood by them as canceled; that prior to the first day of June, 1845, the plaintiffs paid to Steel the full amount of the note, which

he had received from Johnson; and in April, 1844, paid to Haynes the amount of the note of $30, and took up the same; that the plaintiffs paid to Haynes and Johnson, the sum of seventy-five dollars as extra interest, for an extension of the time of payment of the notes, and by an agreement with Haynes, he waived the payment thereof at the time they became payable; that on June 4, 1845, Haynes being deeply insolvent, of which he was well aware, and Tripp, the other defendant, well knowing the same, and also that the contract for the conveyance of the land was outstanding, and that John Foss had assigned his interest therein to Josiah Chase, and that the notes given therefor were all paid by the plaintiffs; and that plaintiffs claimed and were entitled to a conveyance according to the contract, the defendants, designing to defraud the plaintiffs of their just rights under the contract, and to put it out of the power of the plaintiffs to obtain a deed, did fraudulently induce Steel to convey the premises to Tripp, who did on the same day, without the knowledge and consent of the plaintiffs so convey, and in consideration thereof, Tripp took up the note given by Steel to Johnson, and delivered the same to Steel, and instead thereof gave his own note to Johnson, which said Haynes at the same time agreed with Tripp that he would pay; and Tripp agreed to hold the premises in his own name for the benefit of Haynes, and gave to him the note of $100, given by John and Jonathan Foss, and which he received from Steel, and which Steel took from Johnson as aforesaid, and said note is now in the hands of Haynes; that on Oct. 3, 1845, the plaintiffs tendered to Tripp the sum of $268, lawful currency, and demanded of him a deed of the land; which money he refused to receive and also refused to give the deed as requested; and they have at diverse times after the payment of the notes, and before the 21st day of April, 1846, requested Haynes to give them a deed of the premises according to his contract; and that since that time the defendants have cut and carried away from the land, hay, wood and timber of great value; that on the 23d day of April, 1846, the plaintiffs commenced their bill in equity against

these defendants, setting forth the foregoing facts, and praying for relief, which bill was duly served and entered in court, which was pending till May 22, 1847, when the parties entered into a valid agreement in writing, to refer all matters set forth in said bill, together with costs arising thereon and costs of reference, to Isaac Abbott, Charles Gordon and Mark L. Stiles, their award to be made and set down in writing, under their hands, and ready to be delivered to the parties on or before the first day of July, 1847; and the parties bound themselves in said writing, to perform the award of the arbitrators or a majority of them; that the written agreement of submission, was by mistake, delivered by the arbitrators to the defendants, who on being called upon to produce the same, refused to do so; that after the submission was executed and put into the hands of the arbitrators, and due notice to the parties, a full hearing took place in the presence of them, and by the verbal consent of the parties, and the written consent of their counsel, the matter was continued till the tenth day of July within which time, the arbitrators duly made and published their award; that they determined that the plaintiffs should pay to the arbitrators their fees, and should, on the first day of March, then next, pay to the defendants the sum of $127,32, and that the defendants on the payment of the sums awarded, should make, execute and deliver to the plaintiffs, a good and sufficient deed or deeds of the land; that the plaintiffs paid the fees of the referees, and on Oct. 22, 1847, tendered to said Tripp, at his dwellinghouse, the sum of $127,32, lawful currency, in payment of the sum awarded to the defendants, and that said Tripp refused to receive the same, which sum has ever since been ready for him, and is deposited in court ready for him, and on the same day afterwards, the plaintiffs demanded of him a deed of the land, which he refused to deliver, and afterwards on the same day, they caused a deed to be made, and requested Tripp, to execute and deliver the same, which he also refused to do; that the defendants have occupied the land since April, 1846, receiving the rents and profits thereof, and have cut and carried away hay, wood

and timber from the same ; and they pray that the defendants may be decreed to make, execute and deliver to them, a deed or deeds of the land, and that Haynes be compelled to surrender to them the notes, in his hands, which have been paid, to pay the extra interest, which they have received, and for the hay, wood and timber so cut, and for detention of the same.

A demurrer was filed to the bill and several grounds therefor specified and relied upon.

1. It is contended that the bill is multifarious, inasmuch as reliance is placed on a contract made by one of the defendants on August 25, 1832, and upon an award purporting to have been made in July, 1847.  A bill is not multifarious because it joins two good causes of complaint growing out of the same transaction, when all the defendants are interested in the same claim of right, and when the relief asked for in relation to each, is of the same general character.  Story's Eq. Pl. sect. 284, and note.  So far as the bill seeks a conveyance of the land, it is single, and its object is to establish and obtain the relief sought.  The bill charges the original contract with one of the defendants only ; but that after the plaintiffs were entitled to a conveyance by virtue of that contract, the apparent legal title of the land was caused by the defendants to be put into the hands of Tripp, not only with notice of the contract, but with the fraudulent purpose, that it should be held by him for the benefit of the other defendant, and to prevent the plaintiffs from acquiring their just rights under the contract ; and that the whole matter was the subject of arbitration, and an award made in favor of the plaintiffs upon the performance of certain conditions on their part.

It is contended that the bill is subject to a similar objection, because it asks relief on account of money paid to Johnson as extra interest.  The bill alleges that extra interest was paid to Johnson and to Haynes, but it seeks only a decree for the restoration of the latter.

2. Another ground of demurrer is, that the bill is uncertain and equivocal, not showing whether the plaintiffs seek to have executed a supposed award of referees or a contract set forth

in the bill. The great object of the suit is to obtain a convey-
ance of the land described in the contract. For that purpose,
a previous suit in equity was instituted and afterwards made
the subject of arbitration, which resulted in an award, that
conveyance should be made, on the performance of certain
duties, imposed by the arbitrators upon the plaintiffs. It was
necessary in order to obtain a decree, to enforce specific per-
formance of the award on the part of the defendants, that it
should appear from the bill to have been a decision of the mat-
ter submitted; this could be done by reference to the previous
bill, which should make a part of the present bill, or by an
incorporation into the latter, of all the material allegations of
the former; the latter mode has been with propriety pursued,
and after stating in detail, the subject of the former bill, it
charges the reference, the award, publication, and the offer to
perform by the plaintiffs, whatever was required of them, and
asks that the defendant Tripp be compelled to convey the
land. If it was the design of the plaintiffs to institute a suit
in all respects like the former, and with a view to obtain a
specific performance of the contract, and to disregard the sub-
mission and the award, the allegations touching the submis-
sion, award and subsequent proceedings, were entirely unne-
cessary. It is manifest further from the fact of the plaintiffs
having caused to be brought into court, the sum required to
be paid by the plaintiffs by the award, ready for the defend-
ants, that the relief sought is a decree to enforce the fulfil-
ment of the award.

3. It is further insisted, that the bill to compel specific per-
formance of the award, cannot be sustained, because the plain-
tiffs have not set forth in detail, the agreement to refer the
former suit, and the subject of it. The plaintiffs do not pro-
fess to recite in the bill the precise terms of the agreement,
and they allege that it was delivered to the defendants by mis-
take, and that they refused to produce it on demand, before
the bill was brought; but the bill does set out substantially,
what is alleged therein to be that agreement. For the present
inquiry, these facts must be treated as admitted by the defend-

ants, and it is not competent for them to make this objection.

4. Another reason assigned for the demurrer is, that the plaintiffs have a plain and adequate remedy at law. A compensation in damages for the breach of an agreement to convey real estate, is not regarded as adequate relief. It is not possible that the damages awarded, can place the purchaser in all respects in the same situation contemplated by the contract. The locality, the character, vicinity, and accommodation of the land generally, are supposed to give it a special and peculiar value in the estimation of the one, who has paid money therefor, especially if he has long been in the occupation, and has materially improved it according to his own taste. If he should be deprived of it, it might defeat important plans, which he may have formed in connection therewith. " And it is a general principle that the jurisdiction of a court of equity to decree specific performance in cases of contracts respecting lands is universally maintained." 2 Story's Eq. sect. 746 ; *Jones* v. *Boston Mill Corp.* 4 Pick. 507.

It is also a settled principle in equity, that if one person contracts in writing, to sell land to another, and afterwards refuses to fulfil his contract, and transfers his interest in the land to one having knowledge of the contract, the latter stands upon the same equity. He is not liable in a suit at law upon the agreement, not being a party to it, but in equity he will be compelled to convey the land in the same manner as would be required of his grantor, he being treated as the trustee of the latter. 2 Story's Eq. sect. 784. If the transfer is not *bona fide*, but was intended to deprive the party entitled to a conveyance under the contract, of his just rights, by an attempt to put the land out of his reach, the court have jurisdiction on the ground of fraud. R. S. chap. 96, § 10.

5. Another ground of objection is, that the bill does not present such a case as to entitle the plaintiffs to relief from the defendants, by a court of equity. It is admitted, that it is competent for this court as a court of equity, to enforce the specific performance of an award made in pursuance of the sub-

Foss *v.* Haynes.

mission. *Jones* v. *Boston Mill Corp.* 4 Pick. 507. The bill alleges that the matters involved in the former suit were submitted, and recites particularly the whole subject of the bill therein. The arbitrators must have found the allegations in that bill substantially true, and that the contract which was the basis of the suit, subsisting and not forfeited on the part of the plaintiffs, and awarded specific performance by the defendants, on the payment of certain sums awarded to be paid by the plaintiffs, which payments are alleged to have been made, excepting so far as they have been prevented by the defendants. The award is stated in the bill to be a final award in the premises, made in pursuance of the submission. In the present state of the pleadings, the parties having submitted to a tribunal of their own selection, are bound by the decision as part of their own written agreement. It is not competent to contest the award, merely on account of any supposed error of judgment of the arbitrators touching the fraudulent acts of the defendants, as alleged in the former bill, or to institute an inquiry in respect to the evidence of their intentions, or other facts, which were deemed material in making up their award.

It is further contended that the defendants are not bound to answer to the bill because they may criminate themselves, if the allegations in the bill are well laid. It is a settled rule, that no person is bound to criminate himself, or to furnish evidence for any step in the process by which a criminal accusation or punishment can be sustained. Story's Eq. Pl. sect. 591. But it is equally clear, that a defendant may be compelled to make discovery of any act in a suit in equity, which does not amount to a public offence or an indictable crime, although it may be one of great moral turpitude. Nothing is more common than to bring bills for discovery and relief, founded exclusively on charges of fraud. *Ibid.* sect. 596.

*Demurrer overruled.*