H. Merritt Cunningham, Receiver *vs.* W. Burns Long.

Aroostook.    Opinion December 1, 1926.

*Supreme Court Rule XXVIII., which provides for trial at return term, when notice demanding such trial has been given, like other Supreme Court Rules, when properly established, have the force of law and are binding upon the court as well as upon the litigating parties.*

*The party giving such notice has thereby gained some legal right, and the opposite party has the burden of showing sufficient grounds for a continuance.*

*Granting or refusal to grant a continuance is a matter of discretion, and in the absence of anything tending to show that this discretion was not properly exercised it is not subject to exceptions.*

Any person having a direct pecuniary interest in the result of a controversy, ought not to adjudicate in such controversy, but there are exceptions to that rule, sometimes from the necessities of the case and more generally where the interest is too remote, uncertain, contingent, speculative, theoretic, and unsubstantial.

Where a contract requires that a party "shall" do a certain thing, the meaning of of the word ranges under two general classes, according as it is used as implying futurity or implying a mandate; and when the meaning of a word, phrase, or sentence, in a contract may be fairly said to be in doubt, its true meaning, as expressing the understanding of the parties, should be ascertained by an examination of the entire contract. The conduct of the parties, acting under the contract, oftentimes may throw light upon their understanding of the disputed construction.

Where a requested instruction is not given in the precise language offered, but is given in practically the same form, and to it the court adds any suggestion of facts, which facts are distinctly referred to the consideration of the jury, and the suggestions do not appear to be prejudicial to the excepting party as a matter of law, an exception will not avail.

When a requested instruction is simply a rehearsal of a paragraph of a contract, easy to understand, the whole contract being in evidence before the jury, a refusal to repeat the paragraph as a matter of law, especially when the law governing the paragraph has been correctly given elsewhere in the charge, is not such error in law as will warrant this court in sustaining the exception.

When the factual element of a contract is correctly submitted to the jury, and its legal interpretation correctly stated by the court, a refusal to give a requested instruction in the precise words of the contract is not such error in law as will sustain an exception.

When a case has been tried in an environment, and before a jury, peculiarly adapted to the arrival at a true verdict, that verdict must stand unless it be shown that such verdict was reached through bias, prejudice or plain misunderstanding of the law governing the case.

On exceptions and motion.　An action by the plaintiff as receiver for Maine Potato Growers' Exchange to recover the sum of $336.81, alleged to be due him as receiver, from the defendant for payments made to defendant out of the proceeds of the sale of his 1924 crop in excess of what he should have been paid.　The jury rendered a verdict for plaintiff for full amount claimed.　Exceptions were taken by defendant to a refusal to grant a continuance; to the exclusion of certain evidence and also to certain instructions given, and to a refusal to give certain requested instructions.　A general motion also was filed.　Exceptions and motion overruled.

The case is fully stated in the opinion.

*Archibalds*, for plaintiff.

*Herbert T. Powers and Ralph K. Wood*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, JJ.

PHILBROOK, J.　This is an action in assumpsit brought by the plaintiff, admittedly the duly appointed and qualified receiver of the Maine Potato Growers' Exchange, to recover from the defendant a balance of $336.81, the items of debit charged to the defendant, in the account annexed, being for money paid by said Maine Potato Grower's Exchange to the defendant for potatoes delivered, or to be delivered by the defendant, and for storage of potatoes of the defendant furnished at his request.　The credit items are for potatoes delivered by the defendant to the Growers' Exchange.　There is also a money count in the plaintiff's writ.　The general issue is pleaded.　The jury returned a plaintiff verdict in the sum of $339.33, being the full balance sued for, plus allowable interest.　The defendant brings the case to this court upon exceptions and the usual motion for a new trial.

THE EXCEPTIONS.

These are five in number and will be discussed in the order following:

1.　MOTION BY DEFENDANT FOR CONTINUANCE.

The writ was dated January 1, 1926, real estate attachment was made the same day, and service on the defendant made January 2,

1926. The writ was returnable on the first Tuesday of February, 1926, the plaintiff giving notice, at the time when the writ was served, that he demanded trial at the return term. Since the notice demanding trial was given on January 2d, and the return term opened on February second, the plaintiff had complied with Supreme Court rule XXVIII. which provides that any action shall be considered in order for trial at the return term when the party desiring it shall have given written notice thereof to the adverse party, which notice, when given by the plaintiff, must be so done thirty days before the sitting of the court. Under the provisions of R. S., Chap. 82, Sec. 3, the Supreme Judicial Court may establish, and cause to be recorded, rules not repugnant to law, respecting the modes of trial and conduct of business in suits at law and in equity. When so established these rules have the force of law and are binding upon the court, as well as upon parties to an action, and cannot be dispensed with to suit the circumstances of any particular case. *Fox* v. *Conway Fire Ins. Co.,* 53 Maine, 107; *Nickerson* v. *Nickerson,* 36 Maine, 417; *Maberry* v. *Morse,* 43 Maine, 176. Under the rule now being considered this case must be considered in order for trial at the return term, since the plaintiff had complied with the rule, thereby gaining some legal right, and the defendant had the burden of showing sufficient grounds for the continuance which he requested.

The motion for continuance shows two grounds upon which the defendant relied for support; first, alleged interest of the presiding Justice; second, insufficient time for properly examining records, and other evidence, and properly preparing his defense. As to the first ground, the defendant alleges and offered testimony in support thereof, that at the time when he entered into his contract with the Maine Potato Growers' Exchange, the construction of which and the determination of the legal rights of the parties thereunder, form the real issues in the case at bar, the Justice presiding at the return term was counsel for the Exchange; that said justice was also a signer of a similar contract with the Houlton District Potato Growers' Association, and was a member of that corporation, which last named Association was interested in the result of this suit as its members would be entitled to share proportionately in any funds remaining in the hands of the receiver for distribution.

The theory of the common law is that any person having a direct pecuniary interest in the result of any controversy ought not to

adjudicate in such case from fear that his interest might influence his judgment. He was required therefore to be indifferent as to both parties to the litigation, having no pecuniary interest either way. But there are exceptions to that rule, sometimes from the necessities of the case, and more generally where the interest either way is too remote, uncertain, contingent, speculative, theoretic, and unsubstantial to be legally estimated. *State* v. *Bangor and Brewer*, 98 Maine, 114; *Fletcher* v. *Somerset Railroad Company*, 74 Maine, 434. The Maine Potato Growers'· Exchange is in the hands of a receiver and the record does not disclose any likelihood that any dividend from the assets of the Exchange would ever be paid to the Houlton Association.

The ruling of a presiding Justice, denying a motion for continuance, is clearly a matter of discretion, and in the absence of anything tending to show that this discretion was not properly exercised the ruling is not subject to exceptions. *Fitch* v. *Sidelinger*, 96 Maine, 70. Such rule has been adhered to by this court since the decision in *Rumsey* v. *Bragg*, 35 Maine, 116, more than seventy-five years ago, and its universality in other courts of justice is shown by the statement in 6 R. C. L., 544. ''The fundamental principle running throughout the subject of continuance is that the granting or refusal of a continuance rests in the discretion of the court to which the application is made, and that its ruling in reference thereto will not be disturbed by an appellate tribunal unless an abuse of discretion is shown;'' which statement is supported by citation not only of federal authorities but also from more that twenty state jurisdictions, as well as from English courts. In the light of these authorities, and the record of the case, after careful examination, we are unable to find that this exception will avail the defendant.

2. EXCLUSION OF EVIDENCE THAT CERTAIN PROVISIONS OF THE CONTRACT BETWEEN THE DEFENDANT AND HIS DISTRICT ASSOCIATION, WHICH CONTRACT, AS DEFENDANT CLAIMS, WAS INCORPORATED IN AND FORMED A PART OF THE CONTRACT BETWEEN THE DISTRICT ASSOCIATION AND THE EXCHANGE, WERE NOT CARRIED OUT BY THE EXCHANGE.

For a better understanding of the defendant's position under this exception we may briefly state the genesis and gist of the transactions which developed the controversy in the case at bar.

In the so-called potato belt of Aroostook county a proposition arose to organize non-profit associations, without capital stock, under appropriate laws, for the purpose of promoting, fostering, and encouraging the business of marketing potatoes cooperatively; for reducing speculation; for stabilizing potato markets; for cooperatively and collectively handling the problems of potato growers; and for other pertinent purposes. About thirty of these associations were formed, each controlling certain territorial districts. On January 25, 1923, the defendant became a member of the Presque Isle district association by signing an instrument which was declared to be "one of a series substantially identical in terms. All such instruments shall be deemed one contract for the purpose of binding the subscriber, to the same extent as if all the subscribers had signed only one such contract."

In paragraph thirteen of this instrument, so signed by the defendant, it was provided that "This association shall unite with other associations, organized under a similar agreement, and for similar purposes, to form a central agency for co-ordinating the activities of all such associations within this State, and for carrying out the purposes thereof in an efficient and centralized manner. This central agency shall be organized as soon as five such organizations have been duly and legally incorporated according to this Standard Association Agreement. The central agency shall be called the Maine Potato Growers' Exchange." The same paragraph stipulated expressly that the Exchange shall not act for itself, but "wholly and solely as the agent, under specified and authorized powers, of such association." Thus the Maine Potato Growers' Exchange came into being. It was purely and simply an agency, whose principal was the combined district associations. The defendant did not sign a contract with the Exchange but did sign one with the Presque Isle district association, a constituent part of the principalship. The contract between the defendant and his District Association contained the following provisions:

"5. The Association shall pool or mingle the potatoes of the grower with potatoes of a like variety, grade and quality, delivered during the same week by other growers. The Association shall grade the potatoes and its classification shall be conclusive.

"6. The Association agrees to resell such potatoes, together with potatoes of a like variety, grade and quality, delivered by other

growers under similar contracts, at the best prices obtainable by it under market conditions at the time of resale; and to pay over the net amount received therefrom (less freight, insurance and interest) as payment in full to the growers named on contracts similar hereto, according to the potatoes delivered in the same week by each of them, after deducting therefrom, within the discretion of the Association, the costs of maintaining the Association and costs of handling, grading, storing and marketing such potatoes, and of reserves for credits and other general purposes, (said reserve not to exceed two per cent. of the gross resale price). The annual surplus from such deductions must be prorated among the growers delivering potatoes in that year on the basis of the value of deliveries.

"7. The grower agrees that the Association may handle, in its discretion, some of the potatoes in one way and some in another; but the net proceeds of all potatoes of like variety, quality and grade in any weekly pool, less charges, costs and advances, shall be divided ratably among the growers in proportion to their deliveries to such pool, payments to be made from time to time until all accounts in each pool are settled."

The defendant attempted to offer evidence that these provisions of the contract had not been carried out by the Exchange. This testimony was excluded by the court and the defendant seasonably excepted. This element constitutes the basis of the second exception.

In argument of this exception the defendant claimed that these provisions prescribe the method, and the only method, in which potatoes should be handled by the Association, and in order to recover in this action the Exchange must show that it complied with the express terms of the contract under which it sold the potatoes grown by the defendant; also that he was prepared to show that if his potatoes had been handled in accordance with these provisions a much larger sum would have been received by him than was actually received.

All testimony relating to the breach of these provisions was excluded by the court on the ground that "the provision in the Association Contract and Marketing Agreement presented to the court, namely paragraph 5, page 10," (above quoted) "is not mandatory."

The contract says that the Association "shall pool," and "shall grade" the potatoes of its members, and the defendant claims this to be such a mandatory "shall" that its failure in respect to these provisions is a conclusive bar to recovery in this suit.

The various meanings of the word "shall" range under two general classes according as it is used as implying futurity or implying a mandate, and it is familiar law that when the meaning of a word, phrase, or sentence, in a contract, may be fairly said to be in any doubt, its true meaning, as expressing the understanding of the parties should be ascertained by an examination of the entire contract. The conduct of the parties, acting under the contract, oftentimes may also throw light upon their understanding of the disputed construction. That the word "shall," in this contract, contains an element of futurity is plainly to be seen since nothing was to be done by the Association relative to pooling and grading until some future time in which potatoes were delivered to it by the grower. If the mandatory element were to be attached to the word "shall," as claimed by the defendant, he must ask the court to ignore not only other provisions of the contract but also the conduct of both the defendant and his association in the handling of his potatoes in the previous year, under the same contract, and his own admissions in testimony as to his reasons for offering this element of his defense. We have carefully examined the entire contract, as well as the conduct of the parties under that contract, as shown by the record, and are of opinion that there was no error in the ruling of the court below upon which this exception should be sustained.

### 3. REFUSAL TO GIVE REQUESTED INSTRUCTION.

The defendant requested the court to give the following instruction:
"The plaintiff was bound to distribute the net proceeds of potatoes sold by it so that every grower should receive the same as every other grower for the same quantity of any variety, grade and quality of potatoes delivered to and sold by it."

The court declined to give this instruction in the precise language asked for by the defendant, but did give the following instruction:

"This plaintiff was bound to distribute the net proceeds of potatoes sold by it in any one season so that each grower should have and receive as return for his potatoes proceeds computed by exactly the same method and under the same rule, regardless of the quantity offered, in variety, grade and quality of potatoes delivered to and sold by it, other conditions being the same. Defendant says that the fact that the Portage Lake shipments were taken, just when they

were, shrunk him too hard, the fact that when the house was being used in the winter months to load cars through, and his were not put out, caused him excessive shrinkage, unfairly and unjustly; that he suffered in money because the shrinkage became greater every thirty days, or every day. Well, now, I instruct you that if it were not a cooperative proposition, more weight would attach to what he suggests. As I look at it, with these men situated, a great many of them a long distance from ware-houses, with the right and the urge on the part of the Exchange that there shall be a farm storage, this will inure to the benefit of those who participate in a greater surplus, because they do not have to pay for the building of so many houses. Is it fair business, gentlemen, to hold houses at the loading points ready to receive the barrels that come down through the frosts, over the icy roads, in the cold months of December, January and February, and hold back for a time those that are safely stored in snug, tight, warm houses? That is for you to say. If discrimination was directed against W. Burns Long and his potatoes in his two and a half bins, and his other bins, by virtue of concerted acts, or by neglect, on the part of this association, and he suffered thereby, he is to be recompensed by reducing this charge against him, provided you find there is any charge against him, but if, in the attempt in a rational and businesslike way by the officers of this great corporation to handle this crop of eight million bushels or barrels, or whatever it is, in the most fair and equitable manner for all who are within the limits of that circle of membership, it were reasonable to take care of the stuff that was liable to be hurt by frost, and to have the storage room ready for that purpose, then you should find that there was no discrimination against him."

The defendant seasonably excepted to the refusal of the court to give the requested instruction, and to the instruction as given by the court.

The requested instruction was given in practically its exact form, but to it the court added suggestions regarding the Portage Lake shipments, including questions of fact which were properly left to the decision of the jury, which addition does not appear to be prejudicial to the defendant as matter of law. This exception must also be overruled.

4. REFUSAL TO GIVE REQUESTED INSTRUCTION REGARDING RESERVE.

The defendant requested the court to give the following instruction:

"The contract between the Association and the Exchange is the contract which governed the conduct of the business of the Exchange. Under that contract the Exchange did not have authority to retain as reserve any amount in excess of one per cent of the total gross value of potatoes handled by it during the year."

The defendant, in asking for this instruction, relied upon a paragraph in the contract between the District Association of which he was a member, and the Exchange, which reads as follows:

If at the end of each fiscal year a surplus of funds is on hand the Association may retain as a reserve any amount not in excess of 1% of the total gross value of potatoes handled by it during the year and any balance shall be prorated among the members of the Exchange according to the gross value of the potatoes handled by the Exchange for them respectively during the calendar year."

The defendant claimed that the evidence showed that the Exchange retained, out of the 1923 crop, a sum in excess of that which should have been retained, and that he was entitled to credit upon his account for his proportion of the balance of said sum retained by the Exchange as reserve.

The amount of excess, and the portion thereof actually reserved, were questions of fact for the jury. The contract was in evidence before the jury. The requested instruction was simply a reiteration of a paragraph of the contract, easy to understand, and was not one of law, error in which would be ground of exception. Moreover, the court had given the law relating to this excess reserve, in another part of his charge, and his refusal to give the instruction, as requested, was not an error in law which would avail the defendant.

5. THE EDGAR W. RUSS TRANSACTION.

It appeared from the evidence of Andrew J. Beck, business manager of the Exchange while it was in operation, that in the Fall of 1924 one Edgar W. Russ held a number of crop mortgages upon the crops of individuals who were members of the several District Associations. The Exchange made a contract with Mr. Russ under which it guaranteed to pay him a sum equal to the 1924 fertilizer bills of these mem-

bers covered by his crop mortgages.    This transaction resulted in a loss to the Exchange, that is to say, that the sum paid Mr. Russ exceeded the net amount received for potatoes delivered by his mortgagors.

The defendant contended that this transaction was in effect a purchase of potatoes by the Exchange from Mr. Russ and that he (the defendant) was not bound to reimburse the Exchange any portion of the loss incurred in this transaction.

The court instructed the jury as follows:

"The Association, under the provisions of Deft's Exhibit 1, section 13, sub-section c, page 11, had the right to pay the Russ mortgages, so-called, and had the right to use its property for that purpose, and the Maine Potato Growers' Exchange, as the agent of the Association, had the same right to pay the same from its property, and in either event to charge any payment so made to the debtor grower proportionately; and if you did find that it did no more in the Russ incident than as expressed in c, on page 11, it is no defense in this suit that that incidental transaction was made either in whole or in part, or to any degree, the paragraph reading as follows: 'If the Grower places a crop mortgage upon any of his crops during the term hereof, the Association shall have the right to take delivery of his potatoes and to pay off all, or part, of the crop morgtage for the account of the Grower, and to charge the same against him individually'."

The factual element of this instruction was properly submitted to the jury and the legal interpretation correctly stated by the court. This exception is without avail.

THE MOTION.

The reasons for a general motion for new trial, including the controversy regarding the charge for storage, are covered by the discussion of the exceptions and hence the motion does not call for further discussion.    There is little, if any, controversy concerning the facts. The case was tried before a jury, and in an environment, peculiarly adapted to the arrival at a true verdict.    That verdict must stand.

*Exceptions and motion overruled.*