H. Eugene COLLETT

v.

Thomas O. BITHER.

Supreme Judicial Court of Maine.

Feb. 19, 1970.

Malcolm Berman, Houlton, for plaintiff.

John O. Rogers, Houlton, for defendant.

Before WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Justice.

In preparation for trial of his action charging the defendant with the alienation of his wife's affections, plaintiff sought under Rule 33, M.R.C.P., answers to 19 interrogatories. Defendant's timely objections thereto on the ground of constitutional privilege against self-incrimination were heard in the Superior Court and the defendant was ordered to answer questions numbered 1, 2, 3, 4, 12, 14, 17, 18 and 19 but excused from answering the others. Aggrieved in part by the Court's decree, defendant under Rule 72(c), M.R.C.P., made a motion to the Court below for the report of the case to the Law Court to have the question of law involved in the Court's interlocutory order determined before any further proceedings are taken in the action. The reference ruling on the enumerated interrogatories is before this Court on the report of the Justice below.

Plaintiff raises the jurisdictional propriety of the report, contending that the case was not reportable under Rule 72(c), since the Court below had rendered its decision upon the interlocutory matter. The rule reads as follows:

"(c) Report of Interlocutory Rulings. If the court is of the opinion that a question of law involved in an interlocutory order or ruling *made by it in any action* ought to be determined by the Law Court *before any further proceedings are taken therein*, it may *on motion of the aggrieved party* report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties *without making any decision therein*." (Emphasis supplied.)

A close reading of the rule dispels any possible ambiguity and requires as a prerequisite to permissive unilateral report of an interlocutory matter by a trial judge, 1) a judicial ruling thereon, 2) a motion to report the same by the aggrieved party and 3) a certificate by the trial judge that in his opinion the question of law involved in the interlocutory order or ruling ought to be determined by the Law Court before any further proceedings are taken. It is only after the trial judge has made his ruling that his interlocutory determination can be tested in the Law Court on report, and then, while action by the Law Court on the report is pending, all further pro-

ceedings stop in the trial court except such as are necessary to preserve the rights of the parties short of a final decision in the case. Such is the natural purport of the language of the rule. Our Court has so construed it in practical operation. See, Brawn v. John Lucas Tree Expert Co., Inc., 1961, 157 Me. 242, 170 A.2d 694, where this Court acted upon the lower Court's report to determine the propriety of its grant of summary judgment in favor of the plaintiff on the sole issue of liability on motion of the aggrieved defendant.

■ The power of a judge of the Superior Court to report to this Court any action is wholly derived from statute, 4 M. R.S.A. § 57, as implemented by Rule 72, M.R.C.P. The Supreme Judicial Court sitting as a Law Court is of limited jurisdiction. As such, it is a statutory court and can hear and determine only those matters authorized by statute and brought to it through the statutory course of procedure or that outlined by court rule implementing enabling legislation. See, Sears, Roebuck & Co. v. City of Portland, 1949, 144 Me. 250, at 253–254, 68 A.2d 12, at 14.

■ Our Rule 72(c) provides for the report of an interlocutory order or ruling without the consent of all the parties to the action and when adopted in 1959 was an innovation in Maine practice. It was patterned in part after the provisions of the Massachusetts General Laws, Chapter 231, Section 111. Field and McKusick, Maine Civil Practice, Rule 72, Reporter's Notes, p. 538. The Massachusetts statute, couched in perhaps clearer language than our rule, confirms our interpretation thereof. It reads in pertinent part as follows:

"If a justice of the supreme judicial or the superior court is of opinion that an interlocutory finding or order made by him ought to be determined by the full court before any further proceedings in the trial court, he may report the case for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties."

The Massachusetts Court has construed the statute as we do our Rule 72(c), that a judge of the Superior Court cannot report an interlocutory matter unless he has made an order deciding the interlocutory issue. Pierce's Case, 1950, 325 Mass. 649, 92 N. E.2d 245. When the Justices of the Supreme Judicial Court of Maine adopted the Massachusetts practice in reporting interlocutory matters for the purpose of appellate review, it must be assumed that they were familiar with the interpretative rulings previously made by the courts of that Commonwealth respecting the enabling procedural legislation and intended to adopt the same. See, by analogy, Mt. Vernon Tel. Co. v. Franklin Farmers' Co-op. Tel. Co., 1915, 113 Me. 46, 49, 92 A. 934; Foye v. Consolidated Baling Machine Company, 1967, Me., 229 A.2d 196. We conclude that the instant report is properly before us.

The plaintiff further contends that if this Court will entertain the present report, it should review the propriety of the lower Court's entire order, that is, not only that part of the decree requiring the defendant to answer certain interrogatories, but also that excusing him from answering the remaining questions.

■ Public Laws, 1959, Chapter 317, Section 69, enlarged the jurisdiction of the Law Court and permitted in reports of cases appellate review of interlocutory orders or rulings of such importance as to require, in the opinion of the justice, review by the Law Court before any further proceedings in the action. Rule 72(c) was adopted to implement the enabling legislation. Prior to this change in appellate procedure, if a case was reported to the Law Court, the report was considered a submission of the whole controversy, unless it contained restrictions as to the questions to be decided. Under our previous statutory structure this Court frowned upon interloc-

utory matters being sent to it, even upon report at the request of the parties, except at such stage of the case, or upon such stipulation, that a decision of the reported question would, in one alternative at least, dispose of the case itself. Mather v. Cunningham, 1910, 107 Me. 242, 78 A. 102. Under the new legislative directive as restricted by rule implementation, the Superior Court is limited in its report of cases involving questions of law purely interlocutory in nature, to such instances only as arise upon motion for such report of the party aggrieved by the interlocutory ruling. Field and McKusick, Maine Civil Practice, Commentary § 72.6. Rules of the Supreme Judicial Court, properly established and not repugnant to law, respecting the procedures governing appellate review, have the force of law and are binding upon the court, as well as upon the parties to an action. Cunningham v. Long, 1926, 125 Me. 494, 135 A. 198; Hutchins v. Hutchins, 1939, 136 Me. 513, 4 A.2d 679. We shall therefore limit our present review within the specific framework of the submission.

The single issue before us is whether the decree of the Justice below erroneously deprives the defendant of his constitutional privilege against self-incrimination when ordering him to answer the following questions:

1) State your full name, date of birth, and occupation.

2) What was your occupation on January 1, 1967?

3) Did you know Plaintiff's then wife Carolyn C. Collett while she was married to Plaintiff while you were married to Betsey Bither?

4) If the answer to Question 3 is yes, did you pay any expenses for food or lodging or both for Carolyn C. Collett in 1967?

12) Have you ever told anyone you were in love with Carolyn C. Collett?

14) On or about the time of the so-called Hospital Charity Ball at Houlton, Maine in 1967, did Plaintiff request you to stop seeing his wife Carolyn C. Collett?

17) Did you know or have reason to know that Plaintiff was becoming distressed emotionally as a result of your relationship with his wife Carolyn C. Collett?

18) Did you do anything to ease or eliminate this distress of Plaintiff at your relationship with his wife Carolyn C. Collett?

19) If your answer to Question 18, above, is yes, explain in detail what you did to ease or eliminate Plaintiff's emotional distress at your continuing your relationship with his wife Carolyn C. Collett?

The pertinent Maine constitutional provisions read as follows: Constitution of Maine, Art. 1, § 6. Rights of persons accused

"Section 6. In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election;

To demand the nature and cause of the accusation, and have a copy thereof;

To be confronted by the witnesses against him;

To have compulsory process for obtaining witnesses in his favor;

To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity.

*He shall not be compelled to furnish or give evidence against himself, nor be deprived of his life, liberty, property or privileges, but by judgment of his peers or the law of the land."*

"Section 6–A. *No person shall be deprived of life, liberty or property without due process of law,* nor be denied the equal protection of the laws, nor be denied the enjoyment of his civil rights or be discriminated against in the exercise thereof." (Emphasis in each instance supplied.)

The federal constitutional provisions of the Fifth Amendment are of similar tenor:

" * * * nor shall [any person] be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; * * * "

Appellant contends that all questions which he was ordered to answer relate to privileged matter under the Constitutions of this State and of the United States and therefore reach beyond the permissive scope of Rule 33, M.R.C.P. This rule provides that interrogatories may relate to any matters which can be inquired into under Rule 26(b), which in turn permits the examination of a deponent regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action. Rule 26(b) further specifically provides that "[i]t is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." We surmise that appellant's objections more specifically raise the following issue: Will the answers to the reference questions tend to establish that the defendant was guilty of adultery or criminal conversation with the plaintiff's wife under 17 M.R.S.A. § 101?

Although the instant complaint charges only alienation of the affections of the plaintiff's wife and does not allege any criminal conversation, the gist of these two distinct actionable torts is the loss of the property right of consortium, that is, the loss of the society, comfort, and assistance which the wife, having affection for her husband, would have afforded him, had he not been deprived thereof, intentionally and unlawfully, by art and contrivance. Allen v. Rossi, 1929, 128 Me. 201, 146 A. 692. Absent the possible privilege respecting responsive disclosures in answer to the interrogatories, the plaintiff's inquiries are proper and relevant, since evidence of criminal conversation would have some tendency to establish or support the probability of the alienation of the affections of plaintiff's wife, the controverted fact in the instant action. See Trull v. True, 1851, 33 Me. 367; Nickerson v. Gould, 1890, 82 Me. 512, 20 A. 86.

In Counselman v. Hitchcock, 1892, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, the Supreme Court of the United States, in reviewing the applicability of the constitutional privilege, stated it was an ancient principle of the law of evidence that a witness shall not be compelled, *in any proceeding,* to make disclosures or to give testimony which will tend to criminate him or subject him to fines, penalties or forfeitures. Furthermore, the privilege was recognized as a basic right under the common law. It was the settled rule of the English courts of equity and was made a part of our fundamental law in state and federal constitutions. Robson v. Doyle, 1901, 191 Ill. 566, 61 N.E. 435. In former bills in equity for discovery in aid of civil actions, parties defendants were not bound to answer interrogatories whereby they might incriminate themselves or furnish evidence for any step in the process by which criminal accusations or punishments could be sustained. Story's Equity Pleadings, Sect. 591; Foss v. Haynes, 1849, 31 Me. 81, 90; Dwinal v. Smith, 1845, 25 Me. 379. See, also, Wolf v. Wolf's Executor, 1828, Md., 18 Am.Dec. 313; Skinner v. Judson, 1831, 8 Conn. 528, 21 Am.Dec. 691; Noyes v. Thorpe, 1906, 73 N.H. 481, 62 A. 787, 12 L.R.A.,N.S., 636. The privilege was recognized respecting interrogatories in divorce actions. Marsh v. Marsh, 1863, 16 N.J.Eq. 391, 84 Am.Dec. 164; Black v. Black, 1875, 26 N.J.Eq. 431. It was also available to a party defendant charged in a civil action

with criminal intercourse with the plaintiff's wife. French v. Venneman, 1860, 14 Ind. 282. In Hinds v. John Hancock Mutual Life Insurance Co., 1959, 155 Me. 349, 155 A.2d 721, 85 A.L.R.2d 703, a civil case, we stated that witnesses may properly be expected to claim the privilege against self-incrimination on a question by question basis and that such a request will be honored by the court only when it is satisfied that the danger is real and not fancied or fabricated by the witness, and that the answer, if given, might tend to incriminate the witness. This Court then pointed out, however, that this great constitutional safeguard against self-incrimination was never intended to be used as a means of avoiding the disclosure of the truth by witnesses who only pretend a fear of proving themselves guilty of crime. No sound reason appears why parties should not be entitled to the privilege. Courts in equity in this State have as previously indicated from the very beginning extended the privilege to parties subjected therein to incriminating inquisitorial processes. The rule that a party is not bound to make any discovery which would expose him to penalties was clearly declared in an early federal civil case. United States v. Saline Bank of Virginia, 1828, 1 Pet. 100, 7 L.Ed. 69. Even though the constitutional provisions speak of "the accused" "in criminal cases", the principle of immunity from self-incrimination embodied in our State and Federal Constitutions was generally accepted as applicable to all types of proceedings, including any civil case wherein witnesses and parties are equally protected against self-incriminating disclosures. See, Akers v. Fuller, 1950, 312 Ky. 502, 228 S.W.2d 29.

■ In Malloy v. Hogan, 1964, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, the privilege afforded against compulsory self-incrimination by the Fifth Amendment to the United States Constitution, stated in Counselman v. Hitchcock, supra, to be applicable in any proceeding, was made fully applicable to the States through the due proc-

ess clause of the Fourteenth Amendment. See also, Murphy v. Waterfront Commission of New York Harbor, 1964, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. Protection against compelling a party defendant to testify against himself, whether as a witness in the trial of the case or as a deponent in discovery proceedings, is a fundamental right recognized under the common law and safeguarded against governmental deprivation through constitutional incorporation.

The application of the principle in the instant case may cause hardship to the plaintiff in his efforts to obtain compensatory and punitive damages. It may prevent him from discovery of the truth and completely stifle his attempt at redressing the civil wrong charged against the defendant of having unlawfully alienated the affections of his wife. Society's interest, however, in preserving inviolate the individual's right under our judicial system to be free from compulsory self-incrimination as a necessary adjunct of fundamental justice transcends the State's interest in furnishing to litigants adequate discovery proceedings in their pursuit of civil remedies.

■ The privilege extends not only to the disclosure of facts sufficient in themselves to establish guilt of a crime, but also to any fact which might constitute an essential link in a chain of evidence by which guilt can be established. Malloy v. Hogan, supra; Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. See also, Gendron v. Burnham, 1951, 146 Me. 387, at page 396, 82 A.2d 773, at page 780, 38 A.L.R.2d 210.

■ Reasonable cause on the part of the person questioned to really apprehend danger of prosecution is the standard by which the exercise of the privilege must be tested in state as in federal proceedings. Malloy v. Hogan, supra; Hoffman v. United States, supra. And, in determining whether a real apprehension of danger exists, the judge before whom the problem is

raised must give the benefit of any reasonable doubt to the person claiming the privilege. It is essential, however, to proper judicial administration that the exercise of the privilege not depend upon a purely arbitrary or capricious claim of apprehension of incriminating danger made by the person refusing to answer, and it is for the court to decide whether the fear of self-incrimination entertained by the witness or party is real or imaginary, substantial in character or so improbable or unrealistic that no reasonable person would suffer it to influence his conduct.

■ We believe that the Justice below applied the proper test in determining whether any of the reference questions which he ordered the defendant to answer concerned privileged matter and that his order was proper except as it involved question numbered 4. Did the inquiry regarding payment by the defendant of any expenses for food or lodging or both for Carolyn C. Collett in 1967, if answered, have that tendency to generate in the defendant a real and genuine apprehension of incriminating danger. We believe that the possible furnishing of food and lodging, such as at hotels or motels, by the payment of such expenses by the defendant for the plaintiff's wife has a natural and direct tendency to produce the key to the secret chambers of a secret tryst where criminal sex indulgence could possibly be inferred. The defendant has the constitutional privilege to refuse to answer regarding such potentially incriminating facts which clearly show a reasonable cause for apprehension in the particular setting in which he finds himself. Compelling the defendant to answer question numbered 4 was a violation of his constitutional privilege against self-incrimination and in this there was error.

The entry will be

Appeal sustained. Remanded to the Superior Court for an order consistent with this opinion. So ordered.

WILLIAMSON, C. J., did not sit.