Commonwealth ex rel. Crosby, Appellant, *v.*
Rundle.

Argued May 6, 1964.   Before BELL, C. J., JONES,
COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused August 1, 1964.*

*David H. Kubert,* for appellant.

*Armand Della Porta,* Assistant District Attorney, with him *Thomas M. Reed,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for appellee.

OPINION BY MR. JUSTICE EAGEN, July 1, 1964:

On April 11, 1961, the appellant-defendant, Albert R. Crosby, shot and killed his wife, Georgia Crosby, and one Robert Cliett. On August 15, 1961, the grand jury returned four bills of indictment. In two, he was charged with murder and in two with manslaughter.

On March 12, 1962, he appeared in court with counsel and was arraigned on the two indictments charging murder. The record discloses the following occurred: "Mr. Sprague: At this time, sir, in Case No. 2 on Your Honor's trial list against the defendant, Albert Crosby, the Commonwealth moves for trial against him on Bill No. 420 of August Sessions, 1961, in which he is charged with murder. May he be arraigned on that bill, sir? Judge Hagan: Yes. The Crier: Albert Crosby, in this Bill 420 of the August Sessions, 1961, charging you with the murder of Robert Cliett. How plead you, guilty or not guilty? The Defendant: Guilty generally. The Crier: Your Honor, he enters a plea of guilty to murder generally in Bill 420. Mr. Sprague: At this time, sir, the Commonwealth moves for trial against this defendant on Bill No. 421 of August Ses-

---

* Reporter's Note: On January 18, 1965, the Supreme Court of the United States denied a petition for a writ of certiorari.

sions, 1961, in which he is charged with murder. May he be rearraigned in that bill, sir? Judge Hagan: Yes. The Crier: Albert Crosby, in this Bill 421 charging you with the murder of Georgia Crosby, how plead you, guilty or not guilty? The Defendant: Guilty generally. The Crier: Your Honor, he enters a plea of guilty to murder generally in Bill 421. Mr. Sprague: Now, sir, just for the record, the Commonwealth states that from our summary of the evidence in this case, we will not certify the case; the Commonwealth is pressing for murder in the first degree in both bills, and we would ask that three judges sit. Judge Hagan: As to punishment the Commonwealth is pressing for what? Mr. Sprague: We are going to press for the penalty of life imprisonment in both bills, sir. Judge Hagan: All right. We will take a short recess and see if I can assemble two other judges. Mr. Sprague: May the defendant sign both bills, sir? Judge Hagan: Yes."

Approximately one hour later, a court of three judges proceeded to hear the testimony and, at the conclusion thereof, unanimously adjudged the defendant guilty of murder in the first degree and sentenced him to life imprisonment in each case. No motion for a new trial was filed, nor an appeal from the judgment of sentence entered. Additionally, the defendant never requested permission to withdraw the guilty plea.

On July 30, 1963, an action in habeas corpus was instituted which, after complete hearing, the court below dismissed. An appeal from that order is before us.

Three assignments of error involving the guilty plea proceedings are advanced in support of the granting of the writ. They will be discussed ad seriatim.

It is first urged that "the pleas of guilty generally to the murder charges were not made with understanding, were not voluntary and were contrary to due process of law."

In support of this contention, the defendant asserts that he did not intend to plead guilty to the charge of

murder; that he plead guilty generally on the advice of counsel who told him this course would be "expedient"; that in using the words "guilty generally," he thought he was merely admitting involvement in the homicides; that the killings were committed in self defense; and, that despite his pleas, he felt he would be found not guilty.

At the time of the defendant's arraignment and pleas, he was twenty-two years old. He was represented by counsel of his own choice, who had served as his lawyer on more than one previous occasion. He had reached grade 10A in high school, when he enlisted in the army. Two years and eight months later, he received a dishonorable discharge after having been convicted of larceny by his own plea. Thereafter, he engaged in the work of practical nursing and also served as an auxiliary policeman for one year, during which period he received weekly instructions from police-work teachers.

In view of this background, considered with the facts incident to the arraignment itself plus post trial silence for more than sixteen months, as disclosed by the record, one is hard pressed to lend any credence to his present statement that the guilty pleas were entered without a complete understanding of their import. As to the contention that they were involuntarily made, there are no facts of record to justify such a conclusion.[1]

It must be noted also that the defendant's counsel, at trial, testified in the present proceedings that the defendant impressed him at all times as an intelligent individual; that the defendant discussed with him the facts of the case thoroughly and the meaning of the pleas before they were entered; that at no time did the

---

[1] The question of voluntariness was first raised on appeal. The petition did not suggest or allege that the pleas of guilty were involuntary.

defendant give any indication that he misunderstood what he was doing or in any instance before or after trial manifest lack of knowledge as to the significance of a plea of guilty. Finally, defendant's own assertions, in some respects, do not exactly coincide. For instance, in one breath he says he did not understand the significance of his plea, did not intend to plead guilty, and expected to be acquitted. This is hardly consistent with other testimony wherein he states that his counsel "gave me the assurance . . . not exactly assurance . . . but the way he talked concerning this, it would not exceed second degree, which covered a maximum imprisonment of ten to twenty years."

When an accused pleads guilty to an indictment, it is presumed that he is aware of what he is doing: *Com. ex rel. Yeschenko v. Keenan,* 179 Pa. Superior Ct. 145, 115 A. 2d 386 (1955); *Com. ex rel. Jenkins v. Ashe,* 341 Pa. 334, 19 A. 2d 472 (1941), cert. denied, 314 U. S. 612, 62 S. Ct. 86 (1941). Hence the burden of proving otherwise is upon him. Likewise, there is a strong presumption of regularity in the judgment of conviction for crime and the longer the judgment stands, the stronger the presumption becomes: *Com. ex rel. Savage v. Hendrick,* 179 Pa. Superior Ct. 601, 118 A. 2d 233 (1955). Aside from the above presumptions and, all importantly, the facts are overwhelmingly convincing, that this defendant was fully aware of what he was doing when he plead guilty and that his present assertions to the contrary are completely unworthy of belief.

Complaint is also made that the trial court failed to inquire into the defendant's apprehension of the charges and failed to inform him of the nature and consequences of his pleas of guilty. Where an accused is represented by counsel, there is no obligation on the part of the court to make any such inquiry or explanation, although it may be advisable to do so: *People v. Emigh,* 344 P. 2d 851 (1959); *People v. Loeber,* 323 P.

2d 136 (1958), cert. denied, 358 U. S. 132, 79 S. Ct. 242 (1958); *Ippolito v. United States,* 32 A. 2d 256 (1943); *State v. Cummings,* 328 P. 2d 160 (1958); *United States v. Von Der Heide,* 169 F. Supp. 560 (1959); *U. S. v. Shepherd,* 108 F. Supp. 721 (1952). Under the facts here present, the failure to do so certainly did not constitute lack of due process.

The second assignment of error posed by this appeal is that "the defendant could not be tried by a court without a jury where he did not confess to the commission of the crime of murder."

In this connection, it is submitted that, under the provisions of the Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701, where one is charged with murder, he must be convicted by confession before being tried without a jury and that the defendant's testimony at the hearing before the court did not amount to a confession of guilt.

Where one pleads guilty to a criminal charge before the court, that is a confession of guilt: *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353 (1949), cert. denied, 338 U. S. 862, 70 S. Ct. 96 (1949); *United States v. Lynch,* 132 F. 2d 111 (1942), cert. denied, 318 U. S. 777, 63 S. Ct. 831 (1943); *United States v. Fox,* 130 F. 2d 56 (1942), cert. denied, 317 U. S. 666, 63 S. Ct. 74 (1942); *Com. ex rel. Dandy v. Banmiller,* 397 Pa. 312, 155 A. 2d 197 (1959); and, *Commonwealth v. Kirkland,* 413 Pa. 48, 195 A. 2d 338 (1963).

Further, in determining the sufficiency of the evidence on an appeal following a plea of guilty, we accept as true all of the evidence which, if believed, will support the adjudication: *Commonwealth v. Kirkland,* supra. A reading of the record in this case manifests ample evidence to support the convictions and completely refutes the present contention that the defendant killed justifiably.

Also, after a plea of guilty to a murder indictment, the defendant stands convicted of murder and it is

then the duty of the court, and not a jury, to determine the degree of guilt and appropriate sentence: *Commonwealth v. Kirkland,* supra.

Finally, it is urged that the defendant was denied due process of law because of representation by incompetent counsel.

The record shows that defense counsel had extensive trial experience in other branches of the law. The fact that he had never before represented a defendant in a murder trial does not justify a conclusion of incompetency: *United States v. Helwig,* 159 F. 2d 616 (1947). Moreover, the concept of "effective representation" or "competent counsel" must be strictly construed and absence of effective representation means representation so lacking in competence that it becomes the duty of court or prosecution to correct it, so as to prevent a mockery of justice: *Diggs v. Welch,* 148 F. 2d 667 (1945), cert. denied, 325 U. S. 889, 65 S. Ct. 1576 (1945) ; *United States v. Malfetti,* 125 F. Supp. 27 (1954) ; *Dayton v. United States,* 319 F. 2d 742 (1963) ; *Peek v. United States,* 321 F. 2d 934 (1963) ; *Com. ex rel. Dion v. Tees,* 180 Pa. Superior Ct. 82, 118 A. 2d 756 (1955), cert. denied, 351 U. S. 914, 76 S. Ct. 705 (1956).

· A reading of the present record indicates beyond question that the defendant was effectively represented; that he received a fair and complete hearing; and, that the ends of justice required the adjudication entered.

Order affirmed.