## Commonwealth ex rel. Spensky *v.* Maroney, Appellant.

302 

Argued March 25, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

Louis Abromson, Assistant District Attorney, with him Robert W. Duggan, District Attorney, for appellant.

*Hubert I. Teitelbaum,* with him *Martin M. Shein-man,* and *Morris, Safier & Teitelbaum,* for appellee.

OPINION BY WATKINS, J., September 15, 1966:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas of Allegheny County, in a habeas corpus proceeding, directing the discharge of the appellee and nolle prosequi of pending indictments unless tried before March 7, 1966. The case arises out of sentences imposed on Edward Spensky, the appellee, at No. 40 and No. 41 June Sessions, 1940, aggregating a minimum of ten years and a maximum of twenty years. These sentences were imposed, after pleas of nolo contendere, by the late President Judge MCNAUGHER, who, at the time of the pleas had appointed Attorney Philip Sidransky to represent the appellee. In 1950 the appellee was released on parole. While on parole he was convicted in the State of Ohio in 1953 on a charge of carrying concealed weapons. Upon his release from the Ohio State Penitentiary he was returned to the Correctional Institution in Pittsburgh as a parole violator; and on February 21, 1960 was again paroled. While on this parole he was convicted in Washington and Armstrong counties on charges of burglary and thereupon he was again committed to serve the balance of his sentences.

This writ of habeas corpus attacks the validity of the judgment and sentence pronounced by Judge MC-NAUGHER on the ground that there was a lack of timely appointed counsel and lack of effective counsel. At the first hearing on the writ, the appellee testified that he was brought into court without counsel; that he advised the Assistant District Attorney that he was not guilty and wanted a jury trial; and that the court appointed Philip Sidransky, Esquire, to represent him. The appellee further testified that this attorney did not in any way aid him and that the District Attorney

induced him to sign a plea of nolo contendere by promising him a sentence of two to four years. He was permitted to testify on the question of his guilt or innocence of the crimes to which he pleaded and his testimony was to facts, that if true, would make him guilty only of being an accessory after the fact.

The Commonwealth offered the testimony of Roy Clunk, Esquire, who had been the second Assistant District Attorney of Allegheny County. He testified that he had no distinct recollection of this twenty-five year old case; that during the many years that he was Assistant District Attorney he never made a promise, such as related by this appellant, to any defendant. Mr. Clunk further testified that the late Attorney Philip Sidransky, counsel appointed by the court, was an experienced attorney who frequently appeared in criminal matters in the county courts. At the time of this hearing there was no narrative transcript of what took place at the time of sentencing. The court below accepted the testimony of this appellee and granted the writ on the ground that he did not, at the time of his plea, have the benefit of effective counsel.

Shortly after this order the narrative transcript of the sentencing procedure was discovered. The District Attorney presented a petition to the court below setting forth that fact and asking for a new hearing in that this transcript might throw further light on what happened so many years ago. The petition was denied. The Commonwealth appealed to this Court and the record was remanded for further hearing in accordance with the Commonwealth's petition.

At the second hearing a witness, J. Edward Weber, a county detective, testified that he participated in the investigation of the robberies; that Spensky admitted to him that he planned with his accomplices to commit the robbery; that he pointed out the place to be robbed; and that he led the police investigators to the spot

where the wallets were deposited and that he took the guns from the accomplices and hid them where they were later discovered by the police. This witness also testified that the appellee and his counsel conferred for just a short time to the best of his recollection.

The narrative transcript of plea was introduced into evidence. It reads as follows:

"NARRATIVE TRANSCRIPT OF PLEA
No. 116 to 118 June Term, 1940
No. 40 to 50 June Term, 1940

Date 6/19/40 JUDGE'S FILE No. 318

NAME Walter Skoski, John Soroka and Edward Spersky

No. 40 to 50 June Term, 1940—Robbery as to all defendants.

JUDGE McNAUGHER DIST. ATT'Y Clunk DEFENSE ATT'Y Sidransky

. . .

As to Edward Spersky at No. 40 June Term, 1940—not less than 5 nor more than 10 years to the Western Pen. and stand committed. At No. 41 June Term, 1940 same sentence as at No. 40 to run at the expiration of sentence at No. 40 June Term, 1940. Sentence in balance of cases suspended by reason of the sentence imposed.

"Officer Edward Weber, County Detective Bureau: States that sometime in April Skoski and Spersky met on the South Side, Pittsburgh when they talked about 'easy money' and Sporsky said he knew of such a place in Natrona in Harrison Township. Later on they met Soroka whom Spersky served time with in the Workhouse and then on the night of the 17th of May they all met and Spersky took the other two boys to Tom Hoys pool room in Natrona Heights and pointed it out to them and Skoski and Soroka went back to this place

again about 5:30 in the morning and lined up the patrons with guns and took their purses and money and then went back to Spersky's room where they divided the money and they then took the purses and pocketbooks and threw them into the river. Soroka and Skoski then left and were arrested on their way to Pittsburgh and in Skoski's pocketbook was found the address of Spersky. They then confronted Spersky the next morning with this evidence and he believing that the other two had talked to the police about what had taken place took them to the river bank and showed where they had hidden the pocketbooks and finally admitted that he had received a share of the money and had hidden two guns used by Soroka and Skoski in the coal pile at his home. . . .

"Spersky: Age 27. Married. Residence not given. Record: 1931, served 1 year and day at Moundsville, W. Va. for Larceny. Arrested Elm Grove, W. Va. 1933 but discharged. September, 1933 sentenced to the Workhouse for period of not less than $1\frac{1}{2}$ nor more than 3 years for robbery and Breaking and Entering. May, 1933 sentenced to Workhouse for Att. Ent. Bldg. and C. C. W. to not less than 1 nor more than 2. 1937, arrested on suspicion at Miami, Fla. Admits that he met Skoski about 3 weeks after the latter was released from the Penitentiary and that at that time Skoski wanted to know a good gambling place. Skoski and Soroka then returned to his home about a month later and Soroka wanted to see the place they afterwards robbed and he took them up but returned home because he had been drinking and felt ill. The other two. defendants then returned to his home in about 45 minutes and insisted upon leaving $15 with him and at that time he took their guns away from them and hid them the next day in the coal shed." This shows that conversation took place between the sentencing judge and the defendants, including the petitioner.

The court below found as facts that the appellee did not have the benefit of effective counsel; and that he was an accessory after the fact and not a principal in the crimes charged. He directed that the appellee be discharged unless the District Attorney elected to try him before March 7, 1966.

These findings could only be based on the testimony of this convicted criminal. The court below completely ignored the regularity of the record and the validity of the judgment of sentence. *Com. ex rel. Savage v. Hendrick,* 179 Pa. Superior Ct. 601, 603, 118 A. 2d 233 (1955). It was his burden to prove his contention by testimony which was clear, precise and convincing. It is impossible to conceive how it is possible to find that kind of evidence in the uncorroborated testimony of one who had a long criminal record prior to sentence; a criminal record subsequent to sentencing; and such a grave self serving interest in the outcome of the case. His testimony was contradicted by the Assistant District Attorney, by the county detective and by the narrative transcript of the plea. His delay in raising the questions made it impossible for his contentions to be met by his appointed counsel and the distinguished sentencing judge who died during the twenty-five year delay. It should be noted that the record is silent as to the whereabouts of the accomplices, Walter Skoski and John Soroka, who were present at the sentencing and whose recollection would be equal to that of the petitioner.

The legal effect of a plea of nolo contendere, if the court in its discretion, is willing to accept such a plea, is equivalent to a plea of guilty for the purposes of the prosecution or so far as the indictment is concerned. 10 P.L.E. §176. A voluntary plea of guilty in open court, while represented by counsel, to an indictment for murder, constitutes an admission of guilt and all the facts averred in the indictment and also constitutes

a waiver of all nonjurisdictional defects and defenses. *Com. ex rel. Foeman v. Maroney,* 420 Pa. 486, 489, 218 A. 2d 230 (1966).

"When an accused pleads guilty to an indictment, it is presumed that he is aware of what he is doing: (Citing cases). Hence the burden of proving otherwise is upon him. Likewise, there is a strong presumption of regularity in the judgment of conviction for crime and the longer the judgment stands, the stronger the presumption becomes: Com. ex rel. Savage v. Hendrick, 179 Pa. Superior Ct. 601, 118 A. 2d 233 (1955)." *Com. ex rel. Crosby v. Rundle,* 415 Pa. 81, 85, 202 A. 2d 299 (1964). Any other rule would destroy the finality of judgments, and under it, this appellee has utterly failed to sustain his burden.

As to the inadequacy of counsel, the general rule is that in order for inadequacy or incompetency of counsel in criminal proceedings to be a denial of due process under the Fourteenth Amendment or an infringement of the right to be represented under the federal or state Constitution, the attorney's representation must be so lacking that the trial becomes a farce and a mockery of justice in which case the judgment of sentence, violating either the Fifth, Sixth or Fourteenth Amendment of the federal constitution or a provision of the state constitution, is void. See Collection of Cases in Annotation "Incompetency of Counsel", 74 A.L.R. 2d 1390. Pennsylvania follows the general rule.

In *Com. ex rel. Crosby v. Rundle,* supra, the petitioner had pleaded to a murder indictment in 1962 when he was 22 years of age and was sentenced to life imprisonment. He petitioned for a writ of habeas corpus a year later alleging, inter alia, that his counsel was inadequate. The Supreme Court sustaining an order denying the writ said at page 87: "The record shows that defense counsel had extensive trial experience in other branches of the law. The fact that he

had never before represented a defendant in a murder trial does not justify a conclusion of incompetency: United States v. Helwig, 159 F. 2d 616 (1947). Moreover, the concept of 'effective representation' or 'competent counsel' must be strictly construed and absence of effective representation means representation so lacking in competence that it becomes the duty of court or prosecution to correct it, so as to prevent a mockery of justice. (Citing cases)."

In *Com. ex rel. Mullenaux v. Myers,* 421 Pa. 61, 217 A. 2d 730 (1966), the petitioner entered his plea of guilty to a murder indictment when he was fifteen years old and was sentenced to life imprisonment. His writ. was brought nineteen years after sentence and one of his complaints was that court appointed counsel failed to conduct his defense in a competent manner. The court said at page 66: "As we have previously stated, 'the test for determining whether counsel's assistance was constitutionally ineffective may not be predicated on so unsubstantial a standard as the subjective preference of the accused. . . . Only one test could evolve if such were the standard: Was the accused acquitted? . . .' Commonwealth ex rel. LaRue v. Rundle, 417 Pa. 383, 388, 207 A. 2d 829, 832 (1965). No such test may be applied. To the contrary, the concept of 'effective representation' must be strictly construed and no deprivation found to result unless appellant's representation was so lacking in competence as to make a mockery of justice. See Commonwealth ex rel. Crosby v. Rundle, 415 Pa. 81, 87, 202 A. 2d 299, 303 (1964); cf. Dayton v. United States, 319 F. 2d 742 (D.C. Cir. 1963). We find no such result in the instant case."

It is interesting to note in the *Mullenaux* case, supra, in regard to petitioner's complaint concerning the introduction of a confession at the time of the plea that the Supreme Court said at page 63: "The importance of an insistence on a timely challenge is demon-

strated by the facts of the instant case. Appellant alleges that he was threatened that his failure to give a written confession would result in the imposition of the death penalty. The officer alleged to have made the threat is now deceased. Thus appellant by reason of his delay in raising the issue, has become the sole witness to the crucial interchange."

In *United States v. Wight,* 176 F. 2d 376 (1949) (certiorari denied), 338 U.S. 950, 70 S. Ct. 478, 94 L. Ed. 586 (1950), the relator contended that he did not receive the effective services of counsel. The Court held that in spite of the shortness of time (15 minutes), the appearance of counsel was not perfunctory, where it was shown no lack of knowledge by counsel of either the facts or the law upon which he advised his client. In the instant case where the plea was nolo contendere it can be inferred that there was discussion between counsel and the Court because acceptance of this plea lies entirely within the discretion of the court. See also: *Com. ex rel. Smilley v. Claudy,* 172 Pa. Superior Ct. 247, 93 A. 2d 894 (1953) ; *Com. ex rel. Dion v. Tees* (consultation was for five minutes), 180 Pa. Superior Ct. 82, 118 A. 2d 756 (1955). When accused is represented by counsel, it is not incumbent upon court to inquire into defendant's understanding of charges or to advise him of the nature and consequences of his plea of guilty, although it is better practise to do so. *United States ex rel. Allen v. Rundle,* 233 F. Supp. 633 (1964).

In the instant case the petitioner waited twenty-five years to raise the complaint of inadequacy of counsel. The appointed counsel, who admittedly discussed his plea of nolo contendere with him, is deceased so that, like the petitioner in the *Mullenaux* case, the criminal is the sole witness of what was discussed by counsel and appellee and what advice had been given.

The late President Judge McNAUGHER enjoyed an excellent reputation as one of Pennsylvania's outstand-

ing jurists. Mr. Justice MUSMANNO had this to say about him in *Com. ex rel. Simon v. Maroney,* 405 Pa. 562, 572, 176 A. 2d 94 (1961) : "The hearing judge was Judge WILLIAM H. MCNAUGHER (currently President Judge of the Allegheny County 16-Judge Court of Common Pleas), a veteran of the courts with profound juristic ability, of impeccable impartiality, even temperament and conscientious application to duty."

The order of the court below and its findings of fact must be based on a holding that the trial judge's appointment of counsel and counsel's representation of the appellee was so lacking in competence as to make of the proceedings in Judge MCNAUGHER'S courtroom a farce and a mockery of justice. Such a finding reflects upon the integrity of a deceased member of the bar, who, according to this record, enjoyed a good reputation as a criminal trial lawyer and upon the integrity of one of Pennsylvania's most distinguished judges solely upon the testimony of a chronic criminal, who, because of his delay in raising the question profits by becoming the sole witness in the determination of the problem.

As the Commonwealth points out, the court below was outraged by the sentence and society's failure to rehabilitate the appellee. This appellee was 27 years old at the time of his sentence in 1940. He had prior convictions for larceny, burglary, breaking and entering, beginning in 1931 and served various sentences for these crimes. Subsequent to his sentence in the instant case he was paroled in 1950. He violated his parole by the commission of another crime in Ohio in 1953. He was again paroled in 1960 and violated this parole by his convictions for burglary in Washington and Armstrong counties. He wouldn't be serving the maximum sentence, which seemed to outrage the court below, if he had not repeatedly violated the law subsequent to the sentence.

The order of the court below is reversed and the petition for a writ of habeas corpus is denied.

HOFFMAN and SPAULDING, JJ., dissent.