**UNITED STATES of America ex rel. Albert B. CROSBY**

**v.**

**Alfred T. RUNDLE, Superintendent, Philadelphia, Pennsylvania.**

**Misc. No. 2974.**

United States District Court
E. D. Pennsylvania.

Nov. 3, 1967.

David H. Kubert, Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty., and Michael J. Rotko, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

BODY, District Judge.

On March 12, 1962 relator, while represented by counsel of his own choice, entered pleas of guilty to murder generally on Bills of Indictment Nos. 420 and 421, August Term 1961, in the Court of Quarter Sessions of Philadelphia County, Pennsylvania.

Approximately one hour after relator had so pleaded, a court of three judges was impanelled, and after having heard testimony, unanimously adjudged relator guilty of murder in the first degree. On March 12, 1962 the Court imposed concurrent terms of life imprisonment which relator is now serving at the Eastern State Correctional Institution in Philadelphia, Pennsylvania. At no time did relator or his counsel request leave to withdraw the guilty pleas. No motion for new trial was ever filed; nor was an appeal from the judgment of sentence entered.

On July 30, 1963 relator filed a petition for a writ of habeas corpus with the Court of Common Pleas No. 4 of Philadelphia County (No. 3283), which petition was dismissed by the Honorable Charles Guerin after full hearing. The

decision of the lower court was affirmed on appeal by a unanimous court. Commonwealth ex rel. Crosby v. Rundle, 415 Pa. 81, 202 A.2d 299 (1964); cert. den. 379 U.S. 976, 85 S.Ct. 677, 13 L.Ed.2d 567 (1965). Relator has properly exhausted his available state remedies.

In his instant petition for a writ of habeas corpus relator has alleged several grounds which he claims entitle him to the issuance of the writ. The principal contention raised in the petition is that his rights to due process were violated in that the trial judge, before accepting relator's guilty plea, failed to inquire whether he understood the nature and consequences of his plea. Relator's second major contention is that his counsel failed to inform him properly of his rights and was, therefore, incompetent. Relator has further accused Mr. Gershenfeld of having forced him to plead guilty by falsely assuring him that he would receive a maximum sentence of ten to twenty years if such plea was entered.

These hearings were held by this Court during which relator, his father, and George Gershenfeld, Esquire, relator's trial counsel, all testified. Following these hearings oral argument was presented by both parties on the legal questions presented by the petition; furthermore, the parties were liberally afforded adequate time in which to file extensive briefs.

The facts, as they appear from both the state and federal court records, are briefly as follows:

On April 11, 1961 relator, armed with a .38 caliber revolver, shot and killed his estranged wife, Georgia Crosby, and her paramour, Robert Cliett, shortly after he had found them in *flagrante delicto* at his wife's apartment. Apparently the relationship between the decedents had been going on for some time with relator's knowledge. On the day of the homicide, relator had calmly waited until the decedents had finished their act of sexual intercourse, at which time he discussed with his wife a support order which was then outstanding against him. The parties began to argue. A woman in a near-by apartment heard three shots, followed by two more shots a minute or two later, which were accompanied by the screams of the parties' three small children. The woman then ran to the Crosby apartment where she found the bodies of Mrs. Crosby and Mr. Cliett and summoned the police.

On August 15, 1961 the Grand Jury returned four bills of indictment. In two, he was charged with murder and in two with manslaughter. From the time of his arrest until after his sentence, he was represented by George Gershenfeld, Esquire. Mr. Gershenfeld had been a practicing member of the bar for eleven years and past-president of the National Association of Immigration and Naturalization Lawyers. The instant case was his first homicide trial, although he had tried many civil and criminal cases prior to this time.

On February 28, 1962 Crosby appeared for trial which was continued for two weeks when Crosby indicated he had not decided how to plead. He again appeared for trial on March 12, 1962 before the Honorable Peter F. Hagan and pleaded guilty to murder generally on Bills No. 420 and 421. The trial judge did not question relator with regard to his understanding of the plea before accepting it. Nor did Mr. Gershenfeld question relator in open court because, according to his testimony, he had already discussed the matter fully with relator and saw no need to repeat it at that time. The Commonwealth stated that it would not certify the case and would press for the penalty of life imprisonment. A court of three judges sat to determine the degree of murder involved.

Relator testified on his own behalf before the three-judge panel. He claimed that shortly after he had begun quarreling with his wife, she told Cliett to "get him". Cliett, who was of the same medium build as relator, supposedly advanced towards him with a wooden slat whereupon relator began firing wildly at Cliett.

Relator gave completely unsatisfactory answers when questioned by the court as

to why he did not retreat. Evidently the court totally rejected relator's story that Cliett ever wielded such a board.

Mr. Gershenfeld did not ask the court for leave to withdraw the guilty pleas; nor did the judges do so on their own motion. At this time relator did not complain that he was forced to plead guilty or that he failed to understand what he was doing in entering such a plea.

The court deliberated briefly, and unanimously adjudged him guilty of murder in the first degree, and sentenced him to life imprisonment in each case.

■ Relator's primary contention is that the state court record must affirmatively reveal the requisite explanation to the defendant by the court of the nature of the charges against him and the consequences of his plea, as well as defendant's knowledgeable response. We reject this argument.

In this Circuit, the decision by the Court of Appeals in United States ex rel. McDonald v. Commonwealth, 343 F.2d 447 (3rd Cir. 1965) and United States ex rel. Slebodnick v. Commonwealth, 343 F.2d 605 (3rd Cir. 1965) are significant. In both cases the defendant was not represented by counsel in the state court. The court in *McDonald* pointed out:

"\* \* \* In such a case, therefore, the question whether the plea of guilty is voluntarily and intelligently made can only be determined if it is shown on the record what comprehension the accused had of the nature and elements of the charge against him, of the defenses available to him and of the consequences which might flow from a plea of guilty (see Commonwealth ex rel. Barnosky v. Maroney, 414 Pa. 161, 165, 199 A.2d 424 (1964), and these facts should appear on the record at the time the plea of guilty is entered." 343 F.2d at page 451.

However, in the instant case, relator was represented by counsel at all stages of the criminal proceeding, including the time of the guilty plea. And as my Brother, Joseph S. Lord, III, stated in United States ex rel. Smith v. Myers, 250

F.Supp. 460 (E.D.Pa.1966) at page 462, the language in *McDonald* sounds "more cautionary than mandatory."

■ As we read the law of this Circuit, the mere failure of the state criminal court to inquire into the voluntary nature of a guilty plea does not automatically render it involuntary. United States v. Miller, 243 F.Supp. 61 (E.D.Pa. 1965), affd. per cur., 356 F.2d 515 (3rd Cir. 1966), cert. den. 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966). The totality of the circumstances surrounding the plea should be considered in determining its voluntary nature. United States v. Miller, supra; Adkins v. United States, 298 F.2d 842 (8th Cir. 1962).

■ The task of the habeas court would frequently be less difficult if the record of the original proceedings contained a direct inquiry into the defendant's understanding of his actions. It is undeniably true that the state court record in the instant case contains no explanation by the court of the charges, defenses or penalties before the plea was accepted. But state courts are not constitutionally bound to follow this procedure when defendant was represented by counsel, so long as the record as a whole establishes the requisite voluntariness and knowledge.

We now turn to the question of whether relator's plea was, in fact, knowing and voluntary, and in so doing we have examined both the state and federal court records.

Mr. Gershenfeld testified that from the time of relator's arrest until the trial about one year later, he had been in frequent contact with his client both through letters and personal interviews at the prison, relator having been refused bail. During the course of these conferences, Mr. Gershenfeld fully explained the law of homicide to relator, the degree of murder and the penalties for each, and the nature of a guilty plea and its consequences. In particular, Mr. Gershenfeld recalled how he personally interviewed all prospective witnesses to the shooting and checked relator's alleged alibi and his self-defense theory. He

concluded that relator's alibi was absurd and his self-defense story was incredible. He further explained to relator the strength of the Commonwealth's case of first degree murder, the possible death penalty, and the obvious weakness of the case for the defense.

Relator was cautioned that no deals or promises had been made with the district attorney or the court but indicated that he felt there was a good chance that relator would get a life sentence if he pleaded guilty. Mr. Gershenfeld emphatically stated that he at no time told relator that he would get only ten to twenty years if he pleaded guilty. Mr. Gershenfeld also denied having forced relator to plead guilty. Rather, he advised him that in his professional opinion it would be in relator's best interest to plead guilty because of the strength of the Commonwealth's case for first degree murder with no believable defense, and because of the very real fear of the death penalty if he was convicted by a jury.

According to Mr. Gershenfeld, Mr. Crosby understood everything discussed between them and he understood the nature and consequence of a guilty plea and voluntarily decided to plead guilty. He also mentioned that relator had pleaded guilty to a charge of assault and battery the morning of the homicide and clearly indicated that he understood the difference between a plea of guilty and not guilty.

The evidence further shows that relator, at the time of the pleas, was a person quite capable of understanding. He was of about average intelligence and was no stranger to the courts. Cf. Verdon v. United States, 296 F.2d 549 (8th Cir. 1961), cert. den. 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed.2d 811 (1962).

At the time of his pleas, he was twenty-two years old. After reaching the tenth grade in high school he enlisted in the army. Two years and 'eight months later, he received a dishonorable discharge after having been convicted of larceny by his own plea. Following his discharge he worked as a practical nurse for two years and also served as an auxiliary policeman for one year, during which time he received weekly instructions from police-work teachers.

■ Our conclusion, based on our personal observation of relator at his federal habeas corpus hearings, is that he is a person of average intelligence who was continually evasive and gave tricky answers. He was often non-responsive to the questions put to him by the district attorney although he appeared to know · the answers to all questions asked by his own counsel, David Kubert, Esquire. It is clear that questions of credibility are basic to resolution of conflicts of testimony. Townsend v. Sain, 372 U.S. 293, 322, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ The Court is convinced that the pleas in question were purely voluntary and entered into by relator with full understanding of his rights.

■■ We also reject relator's contention that his counsel, Mr. Gershenfeld, was incompetent. We conclude that Mr. Gershenfeld exercised the skill and judgment required of a lawyer in advising his client to plead guilty. A conviction will not be set aside for ineffective representation of counsel unless the service of counsel was of such caliber as to amount to a farce or mockery of justice. Grove v. Wilson, 368 F.2d 414 (9th Cir. 1966); see also, cases cited in Comm. ex rel. Crosby v. Rundle, 415 Pa. 81, 87, 202 A.2d 299 (1964).

■ It appeared that relator's real complaint is with the concurrent sentences of life imprisonment imposed on him. Mr. Gershenfeld testified at the federal habeas corpus hearing that he too was quite disappointed in the severity of the sentence. However, it is not within the province of this Court, reviewing a conviction on habeas corpus, to question the wisdom of the three state judges who imposed the sentence. Since we have determined that the pleas were entered voluntarily, the conviction and sentence must stand.

We have carefully examined relator's remaining contentions and have concluded they are without merit.

The writ, therefore, will not issue.